UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR-IN-INTEREST TO BANK OF AMERICA, N.A., AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2006-CIBC14., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-CIBC14, acting by and through C-III Asset Management LLC as Special Servicer under the Pooling and Servicing Agreement dated as of March 16, 2006,<br><br>Plaintiff,<br><br>-against-<br><br>PROMPT REALTY, LLC and HERMAN FRIEDMAN,<br><br>Defendants. | CIVIL ACTION FILE NO.<br>_____ |

## COMPLAINT

U.S. Bank National Association ("U.S. Bank"), as trustee, successor-in-interest to Bank of America, N.A., as trustee, successor by merger to LaSalle Bank National Association, as trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-CIBC14, Commercial Mortgage Pass-Through Certificates, Series 2006-CIBC14 ("Plaintiff"), acting by and through C-III Asset Management LLC as Special Servicer ("Special Servicer") under the Pooling and Servicing Agreement dated as of March 16, 2006 (the "PSA"), states its complaint as follows:

1

12926768V.4 050902/0972073

## PARTIES, JURISDICTION AND VENUE

1. U.S. Bank is a national banking association with its designated main office located in the State of Ohio.

2. U.S. Bank is the duly appointed and presently serving Trustee for the trust created pursuant to the PSA originally by and among J.P. Morgan Chase Commercial Mortgage Securities Corp., as Depositor; GMAC Commercial Mortgage Corporation, as Master Servicer; Midland Loan Services, Inc., as Special Servicer, Inc.; and LaSalle Bank National Association, as Trustee and Paying Agent.

3. U.S. Bank, not individually, but solely in its capacity as such Trustee under the PSA, acting by and through the Special Servicer, brings this action as Plaintiff with express reference to the Loan (defined below) and the matters related thereto as hereinafter set forth.

4. Defendant Prompt Realty, LLC ("Borrower") is a New York limited liability company that maintains its principal place of business at 101-01 Foster Avenue, Brooklyn, New York 11236. The sole managing member of Borrower is a New York corporation and is not a citizen of Ohio. Borrower is the ground lessor of certain real property and improvements located at 101-01 Foster Avenue, Brooklyn, New York 11236, also known as Block 8134, Lot 1 in Kings County of the State of New York ("Premises") pursuant to that certain Subordinate Lease made as of September 1, 1984 between The City of New York, as lessor, and Beckie Realty Co., as lessee, as assigned by Assignment of Lease dated December 27, 1985, as further assigned to and assumed by Borrower pursuant to an Assignment and Assumption of Lease Agreement dated November 5, 2004 and recorded on March 30, 2005 in the Office of the City Register of the City of New York (the "Clerk's Office") as City Register

File Number ("CRFN") 2005000183271 (the "Ground Lease"). A full description of the Premises is attached hereto as Exhibit A; a full description of the Ground Lease is attached hereto as Exhibit B.

      5.    The Premises is improved by an approximately 400,000 square foot industrial property.

      6.    Defendant Herman Friedman ("Guarantor") is an individual residing in the State of New York with a last known business address of 101-01 Foster Avenue, Brooklyn, New York 11236.

      7.    This dispute arises between citizens of different states, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Therefore, this Court has diversity-of-citizenship jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332.

      8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

**A.**   <u>**The Loan**</u>

      9.    On or about December 30, 2005, CIBC Inc., a Delaware corporation ("Original Lender") made a loan to Borrower in the original principal amount of $8,000,000.00 (the "Loan").

      10.    To evidence its indebtedness under the Loan, Borrower, <u>inter alia</u>, executed and delivered a Promissory Note dated December 30, 2005 in favor of Original Lender in the original principal amount of $8,000,000.00 (the "Note"). Pursuant to the Note, Borrower agreed, <u>inter alia</u>, to make payments of principal and interest in equal consecutive monthly installments on the first day of each and every month beginning February 1, 2006 continuing

3

through and including January 1, 2016 (the "Maturity Date"), at which time all unpaid principal, together with all accrued but unpaid interest thereon and all other sums due under the Note, would be due and payable in full. A copy of the Note is attached hereto as Exhibit C.

11. As collateral security for the payment of the Note, Borrower, among others, executed and delivered a Leasehold Mortgage, Assignment of Lease and Rents and Security Agreement dated December 30, 2005 in favor of Original Lender (the "Mortgage") pursuant to which Borrower, inter alia, granted Original Lender a security interest in the Ground Lease on the Premises. The Mortgage was recorded on March 30, 2006 in Clerk's Office as CRFN 2006000179157. A copy of the Mortgage is attached hereto as Exhibit D.

12. As set forth in Article II, Section 2.1 of the Mortgage, the occurrence of an "Event of Default" includes, inter alia, when:

> (a) Borrower fails to punctually perform any covenant, agreement, obligation, term or condition of the Note, this Mortgage or any other Loan Document which requires payment of any money to Lender, and (1) in the case of any Monthly Payment Amount due under the Note or any payment to any Reserve required under this Mortgage, such failure continues beyond the applicable grace period set forth in the Note with respect to the Monthly Payment Amount, (2) in the case of any other amount due from Borrower to Lender, such failure continues for the applicable period set forth therein or, if no period is set forth, for seven (7) days after such payment becomes due or, if due on demand, is demanded.
>
> …
>
> (c) Borrower fails to perform any other covenant, agreement, obligation, term or condition set forth herein other than those otherwise described in this Section 2.1 and, to the extent such failure or default is susceptible of being cured, the continuance of such failure or default for thirty (30) days after written notice thereof from Lender to Borrower; provided, however, that if such default is susceptible of cure but such cure cannot be accomplished with reasonable diligence within said period of time, and if Borrower commences to cure such default promptly after receipt of notice thereof from Lender, and thereafter prosecutes the curing of

such default with reasonable diligence, such period of time shall be extended for such period of time as may be necessary to cure such default with reasonable diligence, but not to exceed an additional sixty (60) days.

13. As further set forth in Article I, Section 1.16 of the Mortgage, Borrower agreed that:

> Borrower shall keep accurate books and records of account of the Property and its own financial affairs sufficient to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles. Lender and its duly authorized representatives shall have the right to examine, copy and audit Borrower's records and books of account at all reasonable times, upon reasonable advance notice to Borrower and without disruption of the business of Borrower or any tenant or subtenant at the Property.

14. Consistent with the terms of the Mortgage, as further collateral security for payment of the Note, Borrower executed and delivered a Leasehold Assignment of Leases and Rents dated December 30, 2005 in favor of Original Lender (the "AL&R") pursuant to which Borrower assigned to Original Lender all Leases and Rents. The AL&R was recorded on March 30, 2006 in the Clerk's Office as CRFN 2006000179158. A copy of the AL&R is attached hereto as Exhibit E.

15. As collateral security for the payment of the Loan, Borrower, inter alia, granted Original Lender a security interest in all Leases and Rents (as those terms are defined in the AL&R) generated from the Premises. The recital paragraphs of the AL&R provide that:

> IT IS AGREED that, notwithstanding that this instrument is a present, absolute and executed assignment of the Rents and of the Leases and a present, absolute and executed grant of the powers herein granted to Lender, Borrower is hereby permitted, at the sufferance of Lender and at its discretion, and is hereby granted a license by Lender, to retain possession of the Leases and to collect and retain the Rents unless and until there shall be an "Event of Default" (as defined herein) under the terms of this Assignment or any of the other Loan Documents. Upon an Event of Default, the

> aforementioned license granted to Borrower shall automatically terminate without notice to Borrower, and Lender may thereafter, without taking possession of the Property, take possession of the Leases and collect the Rents.

16. By the Indemnity and Guaranty Agreement dated December 30, 2005 and executed by Guarantor in favor of Original Lender (the "Guaranty"), Guarantor assumed liability for; guaranteed payment to; agreed, _inter alia_, to pay, protect, defend and save; and indemnified Original Lender from any and all Costs (as defined in the Guaranty) incurred or awarded against Original Lender as a result of certain enumerated occurrences, including an award in favor of Original Lender as a result of:

> Rents, issues, profits and revenues of all or any portion of the Property received or applicable to a period after the occurrence of any Event of Default (as defined in the Security Instrument)… which are not paid to Lender, to the full extent of the rents, issues, profits and revenues not so applied.

A copy of the Guaranty is attached hereto as Exhibit F.

17. The Note, Mortgage, AL&R, Guaranty and all related loan documents shall be referred to collectively herein as the "Loan Documents."

18. Pursuant to a series of allonges and assignments, Plaintiff is the current holder of the Loan Documents.

### B.  The Defaults Under the Loan Documents

#### 1.  The Monetary Default

19. On January 1, 2016, Borrower defaulted on its obligations under the Loan Documents by, _inter alia_, failing to pay to Plaintiff all of the amounts due and owning on the Maturity Date (the "Monetary Default").

20. As a result, by letter dated March 30, 2016 (the "Default Letter"), Plaintiff, through its counsel, notified Borrower and Guarantor of the Default under the Loan

12926768V.4 050902/0972073

Documents. By the Default Letter, Plaintiff formally demanded payment in full of all amounts due under the Loan Documents. A copy of the Default Letter is attached hereto as Exhibit G.

21.  As of the date of this complaint, despite demand, Borrower has failed to satisfy its monetary obligations under the Loan Documents. As a result, there is now due and owing to Plaintiff an unpaid principal balance in excess of $5,089,872.04 plus accrued and unpaid interest at the rates set forth in the Note, together with such other amounts due and owing under the Loan Documents, including, without limitation, Plaintiff's reasonable attorneys' fees and costs.

**2.    The Accounting Default**

22.  Following the Monetary Default, Plaintiff, both on its own behalf and through counsel, demanded financial statements as well as books and records from Borrower.

23.  Plaintiff provided written notice to Borrower of these requests, including, but not limited to, the following:

   a. August 16, 2016 – rent roll and operating statement for the second quarter of 2016;

   b. November 22, 2016 - rent roll, balance sheet and profit and loss/operating statements for the second and third quarters of 2016;

   c. December 1, 2016 – rent roll, balance sheet and profit and loss/operating statements for the second and third quarters of 2016;

   d. December 5, 2016 - information on how the PILOT being calculated, information on base year amounts for PILOT, 2015 year-end operating statement, 2016 year-to-date 2016 operating statement, and rent roll;

   e. February 6, 2017 - year-end 2015 and 2016 operating statements, rent roll reflecting the new tenant, copy of the executed new lease, 2017 operating budget, and base year PILOT amounts and confirmation of reimbursement from tenants; and

  f. May 15, 2017 – correct rent roll, correct operating statement showing reimbursement of utilities and real estate taxes by tenants, and clarification regarding reduction in rents.

A copy of the communications from Plaintiff to Borrower are attached hereto as Exhibit H.

  24. As of the date of this complaint, despite repeated requests, Borrower has failed to provide its complete financial records (the "Accounting Default").

### 3. The Rental Payment Default

  25. As set forth in the Default Letter, Plaintiff also instructed Borrower and Guarantor to turn over all Rents or other income collected by Borrower. This demand was intended to be continuing and to include all Rents or other income currently held by Borrower, as well as those which may be collected in the future.

  26. Borrower has made payments each month, but as a result of the Accounting Default, Plaintiff is unable to confirm that these payments constitute all of the Rents.

  27. Accordingly, upon information and belief, as of the date of this complaint, despite the request in the Demand Letter, Borrower and Guarantor failed to provide all Rents or other income collected since the Monetary Default (the "Rental Payment Default" and together with the Monetary Default and Accounting Default, the "Defaults").

### C. Plaintiff's Remedies Under the Loan Documents

  28. Pursuant to the express terms of the Loan Documents, Borrower consented to the appointment of a receiver following the Defaults.

  29. More specifically, Article III, Section 3.1(d) of the Mortgage provides that upon the occurrence of an Event of Default, the holder of the Loan Documents may:

> [M]ake application to a court of competent jurisdiction for appointment of a receiver for all or any part of the Property, as a matter of strict right and without notice to Borrower and without regard to the adequacy of the Property for the repayment of the

12926768V.4 050902/0972073

Obligations or the solvency of Borrower or any person or persons liable for the payment of the Obligations, and Borrower does hereby irrevocably consent to such appointment, waives any and all notices of and defenses to such appointment and agrees not to oppose any application therefor by Lender… Any such receiver shall have all of the usual powers and duties of receivers in similar cases, including, without limitation, the full power to hold, develop, rent, lease, manage, maintain, operate and otherwise use or permit the use of the Property upon such terms and conditions as said receiver may deem to be prudent and reasonable under the circumstances…

30. In addition, the recital paragraphs of the AL&R states:

Furthermore, from and after such Event of Default and termination of the aforementioned license, Lender shall have the right and authority, without any notice whatsoever to Borrower and without regard to the adequacy of the security therefor, to: (a) make application to a court of competent jurisdiction for appointment of a receiver for all or any part of the Property, as particularly set forth in the Security Instrument…

31. Paragraph 23 of the AL&R further provides:

Borrower hereby covenants and agrees that Lender shall be entitled to all of the rights, remedies and benefits available by statute, at law, in equity or as a matter of practice for the enforcement and perfection of the intents and purposes hereof. Lender shall, as a matter of absolute right, be entitled, upon application to a court of applicable jurisdiction, and without notice to Borrower, to the appointment of a receiver to obtain and secure the rights of Lender hereunder and the benefits intended to be provided to Lender hereunder.

32. Pursuant to the express terms of the Loan Documents, Borrower consented to turn over all rents following the Monetary Default and Accounting Default.

33. More specifically, Article III, Section 3.1(c) of the Mortgage provides that upon the occurrence of an Event of Default, the holder of the Loan Documents may: "[w]ith or without taking possession of the Property, sue or otherwise collect the Rents and Profits, including those past due and unpaid."

34. With respect to the Accounting Default, in Article 1, Section 1.16 of the Mortgage, Borrower agreed that:

> If any of the aforementioned material are not furnished to Lender within the applicable time periods, in addition to any other rights and remedies of Lender contained herein, Lender shall have the right, but not the obligation, to obtain the same by means of an audit by an independent certified public accountant selected by Lender, in which event Borrower agrees to pay, or to reimburse Lender for, any reasonable expense of such audit and further agrees to provide all necessary information to said accountant and to otherwise cooperate in the making of such audit.

35. As stated in Article III, Section 3.1(g) of the Mortgage, Plaintiff may also "[e]xercise any other right or remedy available hereunder, under any of the other Loan Documents or at law or in equity."

## COUNT I
### (Breach of Contract)

36. Plaintiff realleges and incorporates by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 35 of this Complaint.

37. Plaintiff and Borrower are parties to the Loan Documents regarding the financing provided to Borrower. Guarantor further guaranteed performance by Borrower pursuant to the Guaranty.

38. Borrower failed to pay its indebtedness in accordance with the terms of the Loan Documents.

39. Borrower's failure to pay such indebtedness constitutes a breach of the Note and the other Loan Documents.

40. Borrower and Guarantor failed to provide Plaintiff with all Rents or other income pursuant to the Loan Documents.

12926768V.4 050902/0972073

41. Borrower and Guarantor's failure to turn over all Rents and other income constitutes a breach of the Mortgage, AL&R and Guaranty.

42. Borrower failed to provide Plaintiff with its complete financial records pursuant to the Loan Documents.

43. Borrower's failure to provide its complete financial records constitutes a breach of the Mortgage and the other Loan Documents.

44. As the proximate result of Borrower's breach, Events of Default have occurred under the Loan Documents and Plaintiff is contractually entitled to exercise its remedies under the Loan Documents, which include applying for the appointment of a receiver for Borrower's assets and requesting an audit by an independent certified public accountant.

## COUNT II
### (Appointment of a Receiver)

45. Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1 through 44 of this Complaint.

46. Borrower failed to pay Plaintiff all amounts due under the Loan Documents on the Maturity Date.

47. Borrower and Guarantor failed to provide Plaintiff with all Rents or other income pursuant to the Mortgage, AL&R and Guaranty.

48. Borrower failed to provide Plaintiff with its complete financial records pursuant to the Loan Documents.

49. The Loan Documents expressly allow Plaintiff to seek the appointment of a receiver upon the occurrence of an Event of Default.

12926768V.4 050902/0972073

50. Therefore, Plaintiff, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Ground Lease, the Leases and the Rents.

### COUNT III
### (Accounting)

51. Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1 through 50 of this Complaint.

52. Following the Default, Plaintiff demanded financial statements as well as books and records from Borrower.

53. Borrower failed to provide Plaintiff with its complete financial records pursuant to the Loan Documents.

54. The Loan Documents expressly allow Lender to conduct an audit by an independent certified public accountant upon Borrower's failure to turn over its complete financial records.

55. Therefore, Plaintiff asks the Court to require Borrower to turn over its complete financial records so that an independent certified public accountant can conduct an audit.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A. That the Court grant Plaintiff the relief it seeks on all counts;

B. That the Court appoint a receiver to take possession of, control and hold the Ground Lease, the Leases, and the Rents;

C. That Borrower and its agents charged with operating and/or managing the Premises promptly render an accounting for all Rents and other income from the Premises and

all other revenue received by Borrower from and after January 1, 2016, and provide all such information and reports concerning the ownership, use, operation, management, repair, maintenance and leasing of the Premises as may be required by this Court to provide the receiver appointed by this Court with the information necessary to perform its obligations as receiver of the Premises;

    D. That the receiver appointed by this Court shall segregate, preserve, protect, collect and account for, and manage, operate, lease, maintain and preserve, the Ground Lease, the Leases and the Rents;

    E. That Borrower promptly pay over to the receiver and cause Borrower's affiliates and the management companies currently managing the Premises to promptly pay over to the receiver (1) all deposits by tenants of the Premises and all Rents, revenues and other income from the Premises and all other funds which are currently in their possession or control; and (2) all such deposits, Rents, revenue and other income from the Premises and other funds which are received by any of them from and after the appointment of the receiver;

    F. That the receiver pay to Plaintiff on a monthly basis any income and revenue from the Premises in excess of that amount reasonably required to manage, operate, lease, maintain and preserve the Premises;

    G. That Plaintiff be permitted, at its sole election, and be authorized to make such advances to the receiver for the benefit and account of Borrower under the Loan Documents as may be necessary from time to time, in the exercise of Plaintiff's sole discretion, and as provided under the Loan Documents, to pay costs and expenses reasonably required to manage, operate, lease, maintain and preserve the Premises to the extent that Rents, income and other

12926768V.4 050902/0972073

revenue are insufficient to pay such costs and expenses, all without Plaintiff becoming a mortgagee in possession or incurring any other liability to Borrower;

    H. That any such advances made by Plaintiff pursuant to the foregoing paragraph G of this prayer be additional indebtedness which is owed to Plaintiff under the Note and is secured by the Mortgage and the other Loan Documents;

    I. That Plaintiff be permitted, at Borrower's sole expense, to hire an independent certified public accountant can conduct an audit of Borrower's financial records;

    J. That Borrower and its agents charged with operating and/or managing the Premises promptly turn over the entirety of Borrower's financial records to the certified public accountant so that the certified public accountant can conduct the audit;

    K. That this Court tax all costs of this action to Borrower; and

    L. That this Court award such other and further relief as is just and proper.

Dated: New York, New York
    June 26, 2017

            KILPATRICK TOWNSEND & STOCKTON LLP
            Counsel for Plaintiff

            By: _____
            Keith M. Brandofino, Esq. (KB-2128)
            Stefanie Kennedy (SL-8137)
            The Grace Building
            1114 Avenue of the Americas, 21st Floor
            New York, New York 10036-7703
            Tel: (212) 775-8700
            Fax: (212) 775-8800
            KBrandofino@kilpatricktownsend.com
            SKennedy@kilpatricktownsend.com

12926768V.4 050902/0972073